UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VALERIE WILLIAMS-BARR,

                          Plaintiff,

        v.

NEW YORK STATE DEPARTMENT
OF CORRECTIONS AND
COMMUNITY SUPERVISION, *et. al.*,

                          Defendants.

No. 18-CV-9131 (KMK)

OPINION & ORDER

Albert Van-Lare, Esq.
The Law Offices of Albert Van-Lare
New York, NY
*Counsel for Plaintiff*

Daniel A. Schulze, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Plaintiff Valerie Williams-Barr ("Plaintiff") brings this Action against New York State

Department of Corrections and Community Supervision ("Defendant" or "DOCCS"), Officers

John Doe 1 and 2,  in their personal and official capacities, and Officer Jane Doe in her personal

and official capacity (the "Doe Defendants", or collectively "Defendants"),[1] alleging that

Defendants subjected Plaintiff to sexual harassment, a hostile work environment, and acts of

retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et

seq.*; and the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296.  (*See* Third

---

[1] As of the date of this Opinion, Plaintiff has not yet served or otherwise identified the
three John and Jane Doe defendants.

Am. Compl. (Dkt. No. 35).)[2]  Before the Court is Defendant DOCCS' Motion for Summary Judgment on the Title VII claims.  (*See* Def.'s Not. of Mot. (Dkt. No. 80).)  For the foregoing reasons, Defendant's Motion for Summary Judgment is denied in part and granted in part.

## I.  Background

### A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Civil Rule 56.1, specifically Defendants' 56.1 Statement, (Defs.' Rule 56.1 Statement ("Def's 56.1") (Dkt. No. 81)), Plaintiff's Response to Defendants' 56.1 Statement, (Pl's Resp. to Def's 56.1 Statement ("Pl's Resp. 56.1") (Dkt. No. 102)), and the admissible evidence submitted by the Parties.  The facts are recounted "in the light most favorable to" Plaintiff, the non-movant. *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (quotation marks and citation omitted).

Plaintiff is a former employee of DOCCS who was employed as a registered nurse at Bedford Hills Correctional Facility ("Bedford Hills") for approximately five years until she transferred to a different facility in 2019.  (Def's 56.1 ¶¶ 1–2; Pl's Resp. 56.1 ¶¶ 1–2.)  Plaintiff was never issued a Notice of Discipline during her time working at Bedford Hills, however she received a formal counseling memo on February 27, 2018 for failing to report to an assigned shift.  (Def's 56.1 ¶¶ 93–94; Pl's Resp. 56.1 ¶¶ 93–94.)

### 1.  The Specific Alleged Incidents

On May 13, 2015, Plaintiff alleges that she was sexually harassed by Corrections Officer George Cooper ("CO Cooper") who was standing "to[o] close to her" and "kept sniffing" her

---

[2] The Parties filed a Stipulation and Order of Dismissal, dismissing the following causes of action from the Third Amended Complaint: false imprisonment, assault, and tortious interference.  (*See* Dkt. No. 59.)

(the "first incident").  (Decl. of Mia Timmons in Supp. of Mot. ("Timmons Decl") Ex. D ("ODM

Am. Rpt.") 1 (Dkt. No. 94-4); *see also* Def's 56.1 ¶ 13; Pl's Resp. 56.1 ¶ 13.)[3,4]  In May of 2017,

Plaintiff also alleges that an unidentified officer "invaded Plaintiff's personal and physical spaces

when he pushed his body against the back of Plaintiff's body while she was waiting for the main

door of the facility to be buzzed open" (the "second incident").  (Third Am. Compl. ¶ 15; *see*

*also* Segarra Decl. Ex. A at 4 (Dkt. No. 93-1).)[5]

Finally, on October 4, 2017, Plaintiff alleges that she was pushed by security staff,

causing her to fall down at Bedford Hills (the "third incident").  (*See* Def's 56.1 ¶ 38; Pl's Resp.

56.1 ¶ 38; Decl. of Janet Rojas in Supp. of Mot. ("Rojas Decl.") Ex. A ("Rojas Rpt.") 1 (Dkt.

---

[3] The Court notes that there is some confusion in the record as to when this incident allegedly occurred.  According to the Parties' 56.1 statements and the underlying investigations, this incident took place in May 2015.  (Def's 56.1 ¶ 13; Pl's Resp. 56.1 ¶ 13; ODM Am. Rpt. 1.)  However, in Plaintiff's complaint and briefing, Plaintiff references what appears to be the same incident, now stating that it occurred in August 2016.  (*See* Third Am. Compl. ¶¶ 12–13; Mem. of Law in Opp. to Mot. ("Pl's Opp.") 8 (Dkt. No. 101) (referencing the "assault by Officer Cooper in 2016").)  The Court understands these two incidents to be the same (rather than two separate allegations of sexual harassment) because both Parties describe the allegations as a single incident throughout the record, despite the apparently conflicting dates.  As such, the Court considers the allegations against CO Cooper as stemming from a single incident occurring in May 2015 as dated in DOCCS investigations.

[4] CO Cooper denied the allegations made by Plaintiff in a deposition taken for the purposes of an internal DOCCS investigation.  (*See* Def's 56.1 ¶¶ 67, 97–100.)  Plaintiff lodges several disputes to these statements, stating that Defendant provided incorrect deposition citations.  (*See* Pl's Resp. 56.1 ¶¶ 67, 97–100.)  However, because the Court takes notice of the correct deposition citations, (*see* Decl. of Jennifer Segarra in Supp of Mot. ("Segarra Decl.") Ex. C ("Cooper Depo") 5:18–12:3 (Dkt. No. 93-3)), and Plaintiff does not appear to substantively contest these statements, the Court deems these facts admitted.

[5] Again, there appears to be some conflicting information in the Parties' briefing as to when this incident occurred.  While Plaintiff's complaint and subsequent investigatory records state that this incident occurred in May 2017, (*see* Third Am. Compl. ¶ 15; *see also* Segarra Decl. Ex. A at 4), Plaintiff's counsel states in opposition briefing that this incident occurred in 2018, (*see* Pl's Opp. 8).  As this appears to be a mistake, the Court will assume that this incident occurred in 2017.

No. 92-1).)  According to a "Employee Accident / Injury Report," three officers (two female and one male) were standing outside of a doorway holding open a second doorway.  (Rojas Rpt. 2.)[6] "While opening the [first] doorway[,] the three officers rushed toward[] [Plaintiff] at the same time[,] and one of the female officers pushed her left shoulder and elbow into [Plaintiff's] left shoulder and side, causing [Plaintiff] to fall on the ground hitting her left buttock and left elbow."  (*Id.*)

Several security staff members were identified as witnesses to Plaintiff's alleged assault, but those statements did not corroborate Plaintiff's allegations.  (Def's 56.1 ¶¶ 25–26; Pl's Resp. 56.1 ¶¶ 25–26; *see also* Rojas Rpt. 2 (identifying the alleged witnesses and noting that "all stated they did not witness[] the alleged incident").)  In addition, the Parties dispute whether Plaintiff identified the individual who allegedly pushed her during the third incident.  (*See* Def's 56.1 ¶ 51; Pl's Resp. 56.1 ¶ 51.)  Defendant states that Plaintiff did not "identify by name the individual who allegedly pushed her" instead "merely point[ing] in the direction of the crowd stating, 'she pushed me.'"  (Def's 56.1 ¶ 51.)  Plaintiff states that there was no "crowd" and she pointed directly at Correction Officer Tamia King ("CO King") as the perpetrator.  (Pl's Resp. 56.1 ¶ 51.)  However, the Parties agree that "[n]either the Accident/Injury nor the Workplace Violence Incident Report included the name of the individual who allegedly pushed" Plaintiff.  (Def's 56.1 ¶ 50; Pl's Resp. 56.1 ¶ 50.)

### 2.  Office of Diversity Management Investigation

On December 20, 2016, the Deputy Superintendent for Administration forwarded an informal complaint from Plaintiff about the first incident to the Office of Diversity

---

[6] At the time of the incident, Plaintiff left the facility with her Accident/Injury Report without a signature from her supervisor, but Plaintiff submitted the report the following day. (Def's 56.1 ¶¶ 39, 47, 72; Pl's Resp. 56.1 ¶¶ 39, 47, 72.)

Management's ("ODM") general inbox, (Def's 56.1 ¶ 4; Pl's Resp. 56.1 ¶ 4), and on December 23, 2016, Plaintiff's counsel emailed the administrative team at Bedford Hills to state that he was representing Plaintiff in this matter, (*see* ODM Am. Rpt. 1).  On May 27, 2017, Plaintiff submitted a written internal complaint about the incident to ODM, alleging discrimination based on national origin and retaliation by her co-workers.  (Def's 56.1 ¶¶ 7, 9; Pl's Resp. 56.1 ¶¶ 7, 9; Timmons Decl. Ex. E ("ODM Compl.") 2–3 (Dkt. No. 94-5).)  In addition, Plaintiff checked the box alleging a claim based in sexual harassment.  (Def's 56.1 ¶ 8; Pl's Resp. 56.1 ¶ 8; ODM Compl. 2.)  However, next to the checked box for sexual harassment, the word "maybe" was written, followed by crossing out the words "maybe" and "sexual."  (Def's 56.1 ¶ 8; Pl's Resp. 56.1 ¶ 8; ODM Compl. 2.)  On June 2, 2017, ODM received a completed copy of the written complaint with attachments and opened an investigation.  (Def's 56.1 ¶ 10; Pl's Resp. 56.1 ¶ 10; ODM Am. Rpt. 2.)

On June 30, 2017, ODM conducted a preliminary telephone interview with Plaintiff concerning her complaint.  (Def's 56.1 ¶ 12; Pl's Resp. 56.1 ¶ 12.)  This was followed by an in-person interview on July 12, 2017, where Plaintiff recounted the incident with CO Cooper.  (*See* Def's 56.1 ¶ 13; Pl's Resp. 56.1 ¶ 13.)  During this interview, Plaintiff also stated that because of the incident with CO Cooper, other employees who she believed to be "Jamaican" created a negative work environment for her.  (Def's 56.1 ¶ 14; Pl's Resp. 56.1 ¶ 14.)  Specifically, Plaintiff stated that CO Cooper had put a "gag" order out on her, that Corrections Officer Valerie Bryant ("CO Bryant") had "stepped out in front" of her as she entered the Administration lobby and "began walking 'very very slow'" about three months prior to the interview, and that on two separate occasions, Nurse Latasha Jackson ("Jackson") deliberately allowed the gate/door of the facility to "slam" in Plaintiff's face.  (Def's 56.1 ¶¶ 15–17; Pl's Resp. 56.1 ¶¶ 15–17; ODM Am.

Rept. 3–4.)  On or around July 24, 2017, Plaintiff further alleged that several security staff members "were displaying negative behaviors toward her," but Plaintiff was unable to identify the staff members' names.  (Def's 56.1 ¶¶ 18–20; Pl's Resp. 56.1 ¶¶ 18–20.)  At the time, Plaintiff "did not report that she felt unsafe at the facility."  (Def's 56.1 ¶ 20; Pl's Resp. 56.1 ¶ 20.)  On August 23, 2017, ODM also interviewed Nurse Administrator Patricia Tsuruga ("Tsuruga"), Correction Officer Sharon Simons ("CO Simons"), Jackson, and CO Bryant who each denied any negative treatment toward Plaintiff.  (Def's 56.1 ¶ 21; Pl's Resp. 56.1 ¶ 21.)

On October 5, 2017, one day after the third incident, ODM was informed of Plaintiff's new allegations and received witness statements.  (Def's 56.1 ¶¶ 25, 27; Pl's Resp. 56.1 ¶¶ 25, 27.)  On October 11, 2017, ODM interviewed Lieutenant Bennie Thorpe ("Thorpe") at Bedford Hills, who stated that "he never heard of any issues with officers and [Plaintiff,]" and "as far as he knows[,] no one has ever complained about [Plaintiff] and most officers don't engage in conversation with [her]."  (Def's 56.1 ¶ 28; Pl's Resp. 56.1 ¶ 28.)  Thorpe also denied hearing about a "gag order" placed on Plaintiff.  (Def's 56.1 ¶ 28; Pl's Resp. 56.1 ¶ 28.)

On December 7, 2017, the ODM investigator submitted a Draft Investigation Report ("DIR") to members of the DOCCS' Counsel's Office and the Workforce Development Unit, detailing her investigation and findings that Plaintiff's allegations of harassment and retaliation could not be substantiated.  (Def's 56.1 ¶ 30; Pl's Resp. 56.1 ¶ 30; *see also* Timmons Decl. Ex. C ("Draft ODM Rpt.") 1, 7–8 (Dkt. No. 94-3).)  Specifically, the DIR made the following findings: (1) Bryant denied having any issues with Plaintiff that would precipitate "stepp[ing] out in front of [Plaintiff]" and there were no witnesses to support the allegation; (2) Jackson "did not recall the incident" where Plaintiff alleged that she let a door slam in her face and if it occurred, it "was not intentional"; (3) the staff members identified as "Jamaican" were not in fact of Jamaican

6

descent and the investigation "did not uncover staff activity that was inappropriate or without legitimate business reason"; (4) Plaintiff failed to identify security staff members who allegedly treated her negatively and Plaintiff's alleged facility "safety escort" denied being assigned to that task; and (5) there were no witnesses to the allegation that a "gag order" was placed on Plaintiff. (Draft ODM Rpt. 7–8.)  However, the DIR stated that the allegations against CO Cooper remained pending as he had not been interviewed.  (Def's 56.1 ¶ 30; Pl's Resp. 56.1 ¶ 30; *see also* Draft ODM Rpt. 8.)

On March 20, 2018, DOCCS' Counsel's Office recommended that Plaintiff's "allegations of staff retaliation by refusing to speak to her and blocking her way while walking or slamming gates/doors in her face" be administratively closed.  (Def's 56.1 ¶ 32; Pl's Resp. 56.1 ¶ 32; *see also* Decl. of Nancy Steuhl in Supp. of Mot. ("Steuhl Decl.") Ex. A ("Counsel Determination") 2 (Dkt. No. 91-1).)  Specifically, counsel cited two reasons for administrative closure: (1) the lack of substantiation of the allegations and (2) Plaintiff "failed to connect any of the alleged actions by co-workers to *her* national origin" and did not "articulate[] how she was targeted or mistreated" because of her own national origin.  (Counsel Determination 2 (emphasis added).)  In addition, counsel determined that the allegations against CO Cooper were time barred because "the alleged sexually harassing events took place in 2015" and "under the law a complaint must be filed within one year of the last alleged discriminatory or sexually harassing event."  (*Id*.; *see also* Def's 56.1 ¶ 32; Pl's Resp. 56.1 ¶ 32.)  On March 21, 2018, Plaintiff was notified that her allegations could not be substantiated and that no further action would be taken on her complaint, (Def's 56.1 ¶ 34; Pl's Resp. 56.1 ¶ 34; *see also* Steuhl Decl. Ex. B (Dkt. No. 91-2).)  On the same day, CO Cooper was notified that the claim against him could not be substantiated, no further action would be taken on the complaint, and advised him that "retaliation against the

[Plaintiff] or any person who participated in the investigation is illegal[] and any allegation of retaliatory conduct [would] be investigated." (Steuhl Decl. Ex. C (Dkt. No. 91-3); *see also* Def's 56.1 ¶ 35; Pl's Resp. 56.1 ¶ 35.) On June 4, 2018, an amended DIR was submitted to the DOCCS' Counsel's Office noting that Plaintiff's "credibility [was] questionable at best." (Def's 56.1 ¶ 37; Pl's Resp. 56.1 ¶ 37.)[7]

### 3. Office of Special Investigations ("OSI") Investigation

At the same time as the ODM investigation, the Office of Special Investigations ("OSI") commenced an investigation into Plaintiff's allegations related to the third incident. (Def's 56.1 ¶¶ 38–40; Pl's Resp. 56.1 ¶¶ 38–40.) At the time of the third incident, Bedford Hills conducted a formal investigation, and several staff members in the area at the time submitted written statements. (Rojas Rpt. 2.) Specifically, Corrections Officers Toshia Kelley, Julio Warren, and King provided statements describing the incident, "stating that they were walking through the 'traffic' area and passed [Plaintiff] while walking when they heard a noise and turned to see [Plaintiff] on the floor . . . ." (Def's 56.1 ¶ 41.)[8] All three corrections officers were not separately interviewed for the OSI investigation because the investigator "did not believe there was any information provided by [Plaintiff] that indicated [the officers] were responsible for the

---

[7] The Parties dispute the ultimate reason as to why the DIR was amended. Defendant states that the ODM investigator "was directed to update the credibility portion of the DIR so that the assessment of [Plaintiff's] credibility would be more straightforward. (Def's 56.1 ¶ 36.) Plaintiff states that the investigator "updated the credibility portion of the DIR on her own without instruction and for no reason," asserting that she "did it to limit legal liability in this case." (Pl's Resp. 56.1 ¶ 36.) However, as the Parties do not dispute the fact that the DIR itself was amended, the Court will deem the relevant undisputed facts admitted.

[8] Plaintiff disputes her alleged statements after she was on the floor but does not dispute the other facts outlined in statement 41. (Pl's Resp. 56.1 ¶ 41.) As such, the Court deems the relevant undisputed facts admitted.

[second] incident and [the investigator] believed the officers' written statement to the facility adequately stated their lack of involvement."  (Def's 56.1 ¶ 55; Pl's Resp. 56.1 ¶ 55.)

"On multiple occasions between October 19, 2017 and February 26, 2018," the OSI investigator attempted to conduct an in-person interview with Plaintiff regarding the third incident, however she had not yet returned to work since the third incident occurred.  (Def's 56.1 ¶ 43; Pl's Resp. 56.1 ¶ 43.)  After receiving approval in February 2018, the OSI investigator called Plaintiff to conduct an interview on April 4, 2018 but received no answer.  (Def's 56.1 ¶¶ 44–45; Pl's Resp. 56.1 ¶¶ 44–45.)  After two additional attempts to interview Plaintiff, (*see* Def's 56.1 ¶ 46; Pl's Resp. 56.1 ¶ 46), the OSI investigator recommended that Plaintiff's allegation concerning the third incident be closed as unsubstantiated due to "a lack of supporting evidence" on August 7, 2018.  (Rojas Rpt. 3; *see also* Def's 56.1 ¶¶ 52–53; Pl's Resp. 56.1 ¶ 52.)[9]  The recommendation was approved on November 23, 2018.  (Def's 56.1 ¶ 54; Pl's Resp. 56.1 ¶ 54.)

In addition, the investigator asserted that, at the time of the close of the investigation "it would have been too late to discipline any of the officers" because "[u]nder the Collective Bargaining Agreement, DOCCS only has nine months from the happening of the event to discipline."  (Rojas Decl. ¶ 16; *see also* Def's 56.1 ¶ 56; Pl's Resp. 56.1 ¶ 56.)

### 4.  OSI Sex Crimes Unit Investigation

On September 20, 2018, the OSI Sex Crimes Unit opened an investigation into a complaint by Plaintiff stating "that she had been sexually harassed and retaliated against while

---

[9] Plaintiff lodges a dispute to statement 53, but the Court deems this dispute immaterial. (*See* Pl's Resp. 56.1 ¶ 53.)  Plaintiff appears to dispute the ultimate findings of the OSI Report by arguing that the description of Plaintiff's alleged assailant "wasn't vague," but does not materially dispute that this is indeed a basis upon which OSI investigator deemed Plaintiff's claims as unsubstantiated.  As the OSI Report corroborates statement 53, (*see* Rojas Rpt. 3), and Plaintiff does not appear to dispute the actual contents of the statement, the Court deems this fact admitted.

employed at Bedford Hills . . . by a co-worker." (Def's 56.1 ¶ 57; Pl's Resp. 56.1 ¶ 57.) The

Sex Crimes Unit investigator reviewed the previous ODM investigation files and spoke with the

relevant investigator prior to interviewing Plaintiff on November 2, 2018. (*See* Def's 56.1 ¶¶

58–60; Pl's Resp. 56.1 ¶¶ 58–60.) During this interview, Plaintiff recounted the first incident

with CO Cooper, stating: "As I'm standing there, I can feel his body part on my buttock and his

breath on my neck. And when I turned around, I jumped out of the way, looked at him and

rolled my eyes and folded my hands." (Def's 56.1 ¶ 62; Pl's Resp. 56.1 ¶ 62.) Plaintiff also

alleged for the first time her recollection of the second incident where an unidentified officer

invaded her personal space. (*See* Segarra Decl. Ex. A at 4.)

On November 21, 2018, Plaintiff's "allegations of harassment by staff were referred to

the Westchester County District Attorney's office for criminal charges as the allegations of

forceable touching concerned some level of criminal activity." (Def's 56.1 ¶ 63; Pl's Resp. 56.1

¶ 63.) In the meantime, the OSI Sex Crimes Unit investigator received additional statements

from Plaintiff's coworkers denying Plaintiff's allegations "that she had been insulted and

verbally harassed while experiencing a medical emergency." (Def's 56.1 ¶ 64; Pl's Resp. 56.1 ¶

64.) Instead, Plaintiff's coworkers reported that Plaintiff "was frequently hostile and

argumentative." (Def's 56.1 ¶ 64; Pl's Resp. 56.1 ¶ 64.)

On June 25, 2019, the District Attorney's office declined to prosecute Plaintiff's claims,

stating: "There are inconsistencies in the [Plaintiff's] most recent version of events as compared

to her initial reports (i.e. until the interview conducted on November 2, 2018, the [Plaintiff] did

not allege any type of purported sexual contact in any of her previous interviews or writings) and

based upon the timeline, the disclosure of this event is outside of the statute of limitations." (*See*

Def's 56.1 ¶ 65; Pl's Resp. 56.1 ¶ 65; Segarra Decl. Ex. A, at 2.)

On or around November 24, 2020, the OSI Sex Crimes Unit recommended that the investigation into Plaintiff's allegations be closed as unsubstantiated.   (*See* Def's 56.1 ¶ 68; Pl's Resp. 56.1 ¶ 68; Segarra Decl. Ex. A, at 4, 7.)  Specifically, the investigator made this recommendation "based on the inconsistencies in [Plaintiff's] statements, and documents related to the initial allegation."  (*See* Def's 56.1 ¶ 68; Pl's Resp. 56.1 ¶ 68; Segarra Decl. Ex. A, at 7.)

### 5.  Worker's Compensation Claim and Hearing

On October 6, 2017, a "First Report of Injury" form was filed with the New York State Insurance Fund ("NYSIF") and the Workers' Compensation Board regarding Plaintiff's allegations related to the third incident.  (Def's 56.1 ¶ 73; Pl's Resp. 56.1 ¶ 73.)  According to the Parties, NYSIF is an agency separate from DOCCS, responsible for determining how worker's compensation cases proceed, including issuing denials and providing reasons for those denials.  (Def's 56.1 ¶¶ 76, 78–79; Pl's Resp. 56.1 ¶¶ 76, 78–79.)  Defendant alleges that "surveillance" of Plaintiff "was a standard practice" under their work with NYSIF, (*see* Def's 56.1 ¶ 81), however Plaintiff disputes this, stating that she was being surveilled because she filed a lawsuit, (*see* Pl's Resp. 56.1 ¶ 81).  Nevertheless, on or around October 16, 2017, NYSIF denied (or "controverted") Plaintiff's claims for several reasons, stating that there was "no compensable accident/not in the course of and scope of employment" because there was, among other things, a "willful intent to injure oneself."  (Decl. of Sarah Hoff in Supp. of Mot. ("Hoff Decl.") Ex. A at 9 (Dkt. No. 90-1).)

On March 6, 2018, the Workers' Compensation Board (the "Board") conducted a hearing on Plaintiff's claims.  (Def's 56.1 ¶ 83; Pl's Resp. 56.1 ¶ 83.)  The Board found in favor of Plaintiff at the hearing because NYSIF "failed to provide any witnesses with firsthand knowledge to support their denial of the claim."  (Def's 56.1 ¶ 86; Pl's Resp. 56.1 ¶ 86.)

Plaintiff received a monetary award paid directly by NYSIF after the hearing and DOCCS had no role in compensating Plaintiff.  (Def's 56.1 ¶ 92; Pl's Resp. 56.1 ¶ 92.)

<u>6.  Equal Employment Opportunity Commission ("EEOC") Claim</u>

On November 13, 2017, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging sexual harassment, hostile work environment, and retaliation. (Decl. of Julinda Dawkins in Supp. of Mot. ("Dawkins Decl") Ex. I ("EEOC Claim") at 11 (Dkt. No. 84-9).)  On August 9, 2018, the EEOC responded to Plaintiff acknowledging the charge, (*see id*. at 9), and notified DOCCS about the pending claim on August 30, 2018, (*id*. at 6–7; *see also* Def's 56.1 ¶¶ 69–70; Pl's Resp. 56.1 ¶¶ 69–70.)  At Plaintiff's counsel's request, the EEOC closed its investigation and issued a right to sue letter on July 23, 2018, because "processing [for the complaint was] unlikely to be completed within 180 days of filing" as required for a Title VII claim.  (Def's 56.1 ¶ 71; Pl's Resp. 56.1 ¶ 71; EEOC Claim at 5.)

<u>B.  Procedural History</u>

Plaintiff filed her initial Complaint on October 4, 2018.  (*See* Compl. (Dkt. No. 1).)  On January 2, 2019, Plaintiff filed a First Amended Complaint.  (*See* First Am. Compl. (Dkt. No. 10).)  On May 6, 2019, a former Defendant filed a pre-motion letter in anticipation of filing a motion to dismiss.  (Dkt. No. 15.)  After receiving Plaintiff's response, (Dkt. No. 17), the Court held a pre-motion conference on June 17, 2019, (*see* Dkt. (minute entry for June 17, 2019)).  In lieu of the anticipated motion to dismiss, Plaintiff filed a Second Amended Complaint on July 15, 2019.  (*See* Sec. Am. Compl. (Dkt. No. 19).)[10]  After a lengthy delay, Defendant filed a pre-motion letter in anticipation of filing a partial motion to dismiss.  (Dkt. No. 29.)  After receiving Plaintiff's response, (Dkt. Nos. 30, 31), the Court held a pre-motion conference on July 21, 2020,

---

[10] The Parties filed a stipulation and order of dismissal agreeing to dismiss all claims against Defendant State of New York on July 29, 2019.  (*See* Dkt. No. 21.)

(*see* Dkt. (minute entry for July 21, 2020)).   Following this, Plaintiff filed a Third Amended

Complaint.  (*See* Third Am. Compl.)

Defendant filed an answer to the Third Amended Complaint on September 16, 2020.

(Dkt. No. 38.)  After completing discovery, Defendant filed a pre-motion letter in anticipation of

filing a motion for summary judgment on January 7, 2022.  (Dkt. No. 72.)  After receiving

Plaintiff's response, (Dkt. No. 73), the Court held a pre-motion conference on February 15, 2022

and adopted a briefing schedule, (*see* Dkt. (minute entry for February 15, 2022)).

On April 29, 2022, Defendant filed the instant Motion.  (*See* Not. of Mot.; Def's 56.1;

Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 82); Decl. of Patricia Tsuruga in Supp.

of Mot. (Dkt. No. 83); Dawkins Decl.; Hoff Decl.; Steuhl Decl.; Timmons Decl.; Rojas Decl.;

Segarra Decl.)  Plaintiff filed her Opposition on June 22, 2022.  (*See* Pl's Opp.; Pl's Resp. 56.1.)

On July 8, 2022, Defendant filed its Reply.  (*See* Reply Mem. in Supp. of Mot. ("Def's Reply")

(Dkt. No. 103).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

R. CIV. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same).  "In deciding whether to award summary judgment, the [C]ourt must construe the

record evidence in the light most favorable to the non-moving party and draw all reasonable

inferences in its favor."  *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d. Cir. 2021); *see also*

*Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to

show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373

F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental*

*Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial.  *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).  "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (quotation marks omitted)).

B.  Analysis

Plaintiff alleges that Defendant violated Plaintiff's rights by subjecting Plaintiff to sexual harassment, discrimination because of Plaintiff's sex, a hostile work environment, and acts of retaliation under Title VII.  (*See* Third Am. Compl. ¶¶ 126–28.)  Defendant argues that it is entitled to summary judgment because "the incidents cited by Plaintiff . . . amount to nothing more than petty slights and trivial inconveniences to Plaintiff that do not—as a matter of law—

15

rise to the level of creating a 'severe and pervasive' hostile work environment under Title VII."
(Def's Mem. 1.)  Specifically, Defendant argues that (1) "Plaintiff's Title VII claims based on
conduct more than 300 days prior to November 13, 2017 are untimely" and should be dismissed,
(*see id.* at 11–12); (2) Plaintiff's sexual harassment and hostile work environment claims fail
because the conduct is not sufficiently severe or pervasive, Plaintiff cannot establish that the
conduct was motivated by her membership in a protected class, and there is no basis to impute
liability to DOCCS, (*see id.* at 12–20); and (3) Plaintiff's retaliation claims fail because "she
cannot establish any materially adverse change in the terms and condition of her employment,
much less one that was based on any engagement in any protected activity," (*see id*. at 21–25).
The Court addresses these arguments in turn.

### 1.  Hostile Work Environment

Title VII bars employers from discriminating based on sex in the terms, conditions, or
privileges of employment.  42 U.S.C. § 2000e-2(a)(1).  "A hostile work environment claim
requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the
conditions of the victim's employment and create an abusive working environment,' and [2] that
a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano v.
Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143,
149 (2d Cir. 1997)).  "The plaintiff must show that the workplace was so severely permeated
with discriminatory intimidation, ridicule, and insult that the terms and conditions of her
employment were thereby altered."  *Id.* (citing *Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179,
188 (2d Cir. 2001)).  "The test has objective and subjective elements: the misconduct shown
must be 'severe or pervasive enough to create an objectively hostile or abusive work
environment,' and the victim must also subjectively perceive that environment to be abusive."
*Id.* at 374 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "As a general rule,

incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Perry*, 115 F.3d at 149). Moreover, "[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998)); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("In other words, an environment which is equally harsh for both men and women or for both young and old does not constitute a hostile working environment under the civil rights statutes."). And in making this determination, "the courts have consistently emphasized that the ultimate issue is the reasons for *the individual plaintiff's* treatment, not the relative treatment of different *groups* within the workplace." *Brown*, 257 F.3d at 252 (emphasis in original) (citing *Connecticut v. Teal*, 457 U.S. 440, 453–54 (1982)).

However, to determine whether Plaintiff has established a *prima facie* case of a hostile work environment, the Court must first determine which of Plaintiff's allegations may be considered as part of her claim. "As a precondition to bringing a Title VII suit in federal court, a plaintiff in New York must first pursue administrative remedies with the EEOC by filing a timely complaint within 300 days of an unlawful employment practice." *Caruana v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 19-CV-733, 2022 WL 1192802, at *2 (W.D.N.Y. Jan. 14, 2022) (citing *Yu v. City of N.Y.*, 792 F. App'x 117, 118 (2d Cir. 2020) (summary order)), *report and recommendation adopted*, 2022 WL 1189868 (W.D.N.Y. Apr. 20, 2022); *see also Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *4 (S.D.N.Y. Mar. 22, 2022) (same); *Impellizzeri v. New York*, No. 17-CV-230, 2021 WL

17

4844275, at *2 (N.D.N.Y. Oct. 18, 2021) ("A plaintiff who wishes to pursue a federal

employment discrimination suit under Title VII must file a charge with the EEOC within 300

days of the alleged unlawful employment practice or challenged discriminatory act." (citation

omitted)).  "The filing requirement is analogous to a statute of limitations, barring all claims

arising outside the 300-day period."  *Caruana*, 2022 WL 1192802, at *2 (citing *Russell v. Cnty.

of Nassau*, 696 F. Supp. 2d 213, 226 (E.D.N.Y. 2010)).

Defendant argues that Plaintiff's Title VII claims "based on conduct more than 300 days

prior to November 13, 2017 are untimely[,] . . . time-barred[,] and Plaintiff has failed to exhaust

her administrative remedies with respect to these allegations."  (Def's Mem. 11–12.)  While

Plaintiff concedes that "[d]iscrete discriminatory acts . . . are not actionable if time barred,"

Plaintiff argues that there are "continued violations that do[] not result in statute of limitation[s]

problems for hostile work environment claims."  (Pl's Opp. 7–8.)

Under the "continuing violation" doctrine, "consideration of the entire scope of a hostile

work environment claim, including behavior alleged outside the statutory time period, is

permissible for the purposes of assessing liability, so long as an act contributing to that hostile

environment takes place within the statutory time period."  *Nat'l R.R. Passenger Corp. v.

Morgan*, 536 U.S. 101, 105 (2002).  In hostile work environment cases, "a sexually offensive

incident within the [300-day] limitations period permits consideration of an incident preceding

[that] period only if the incidents are sufficiently related."  *McGullam v. Cedar Graphics, Inc.*,

609 F.3d 70, 77 (2d Cir. 2010).  This consideration of earlier incidents requires an

"individualized assessment of whether the incidents and episodes are related."  *Id*.  Factors may

include the nature, frequency, and severity of the acts, the length of time elapsed between the

timely and untimely acts, and whether it was the same harasser who committed the acts.  *Id*. at

77–78.  "[T]he more remote and oblique the remarks are in relation to the employer's adverse

action, the less they prove that the action was motivated by discrimination."  *Tomassi v. Insignia*

*Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other grounds by Gross v. FBL*

*Fin. Servs. Inc.*, 557 U.S. 167, 177–78 (2009).  "For example, remarks made by someone other

than the person who made the decision adversely affecting the plaintiff may have little tendency

to show that the decision-maker was motivated by the discriminatory sentiment expressed in the

remark."  *Id.*

Here, Plaintiff describes a history of incidents in her workplace that allegedly stem from

a single incident of discrimination based on her sex, which sits firmly outside of the statutory

limitations period: the alleged assault by CO Cooper in May 2015.  (Def's 56.1 ¶ 13; Pl's Resp.

56.1 ¶ 13.)  Beyond this, the Court charitably identifies the second incident—described by

Plaintiff in her initial complaint but otherwise referred to in passing by both Parties—as another

offensive incident of discriminatory conduct: specifically, unwanted touching by an unidentified

employee in May 2017.  (*See* Third Am. Compl. ¶ 15; Segarra Decl. Ex. A at 4.)  To be sure, as

alleged, this second incident does indeed fall within the 300-day limitations period.  However,

even viewing the evidence in the light most favorable to the Plaintiff, "[a]part from [Plaintiff's]

unsupported and conclusory assertions to the contrary," Plaintiff "has pointed to no record

evidence supporting the inference that the abovementioned incident[] of alleged mistreatment

occurred 'because of' any of [Plaintiff's] protected characteristics."  *Petrisch v. HSBC Bank*

*USA, Inc.*, No. 07-CV-3303, 2013 WL 1316712, at *13 (E.D.N.Y. Mar. 28, 2013).  Nor has

Plaintiff pointed to evidence within the record that these incidents are "sufficiently related"

outside of Plaintiff's own assertions.  *McGullam*, 609 F.3d at 77.

Neither Plaintiff nor any of the numerous investigations conducted into the Plaintiff's assertions identify the corrections officer who allegedly assaulted Plaintiff in May 2017.  While it appears that the Parties dispute whose bears the *responsibility* for identifying corrections officers in this and other incidents, (*see* Third Am. Compl. ¶ 15 (stating that the officer is someone Plaintiff "can identif[y] but whose name [P]laintiff does not know")), there is no allegation that this incident occurred due to the "same harasser," namely CO Cooper. *McGullam*, 609 F.3d at 78.  While the nature of the two incidents could be viewed as similar, the length of time that elapsed between the timely and untimely acts makes any connection attenuated at best.  *See id*. at 77–78.  Even with the confusion between the dates of the incidents in question, *see supra* notes 3 and 5, these two incidents are at their closest nine months apart, or at their longest almost three years apart, *see supra* Section I.A.1.  Case law has established "that when there is a significant gap in time between time-barred acts of alleged discrimination and timely allegations, or when the alleged discrimination involves different supervisors and co-workers in different offices, the continuity of an alleged hostile work environment claim may be destroyed."  *Coudert v. Janney Montgomery Scott, LLC*, No. 03-CV-324, 2005 WL 1563325, at *8 (D. Conn. July 1, 2005) (collecting cases throughout the Second Circuit).  As such, these incidents are not sufficiently related to permit consideration of the incident with CO Cooper as related to Plaintiff's hostile work environment claim.

Despite this, the Court can consider whether the second incident, on its own, is enough to establish a sufficiently severe environment to give rise to a hostile work environment claim.  In general, "isolated remarks or occasional episodes of harassment will not merit relief under Title VII . . . [h]owever, a single incident, if sufficiently humiliating or outrageous, could by itself satisfy the 'severe' prong."  *Ruiz v. Bay Shore–Brightwaters Rescue Ambulance, Inc.*, No. 18-

CV-280, 2021 WL 1210315, at *11 (E.D.N.Y. Mar. 31, 2021) (collecting cases).  In conducting

its analysis, a court "must consider the totality of the circumstances," including "the frequency

and severity of the conduct[,] . . . whether the conduct is physically threatening or humiliating as

opposed to merely offensive," and "whether the conduct complained of unreasonable interferes

with the plaintiff's job performance."  *Id*. (citing *Rivera v. Rochester Genesee Reg'l Transp.*

*Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)).  Here, there remains a genuine dispute of material fact as

to the severity of the second incident, counselling against granting summary judgment.

According to the record, Plaintiff first alleged information about the second incident to

DOCCS as a part of the September 2018 investigation conducted by the OSI Sex Crimes Unit.

*See supra* Section I.A.4.  During the November 2, 2018 interview, Plaintiff raised the second

incident, stating that "there was an officer behind me . . . [who] pushed his body into the back of

me, into the back of my body prior to the doors getting buzzed in, and we were like pinned to the

door for maybe like a good two or three minutes."  (Segarra Decl. Ex. B ("Pl's Depo.") 26:11-

27:23 (Dkt. No. 93-2); *see also* Segarra Decl. Ex. A at 4 (recounting the incident).)  On its face, a

jury could conclude that this incident was "sufficiently humiliating or outrageous" because the

conduct is "physically threatening" and, as alleged by Plaintiff, contributed to the ongoing

harassment she experienced in the workplace.  (*See* Pl's Depo. 27:19–21 ("I was tired of the

harassment and just didn't want it to continue.  I want it to stop.  I just want it to stop.").)  *See*

*also Domingues v. Barton Chevrolet Cadillac*, No. 18-CV-7772, 2021 WL 637016, at *4–5

(S.D.N.Y. Feb. 17, 2021) (finding a single incident of a co-worker touching a plaintiff's breast

"extraordinarily severe" (collecting cases)); *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d

Cir. 2000) (finding that a co-worker's loud, public claim that the plaintiff had performed fellatio

for her promotion was per se severe); *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 255,

259 (S.D.N.Y. 2014) (finding single incident to give rise to hostile work environment claim where co-worker subjected female plaintiff to sexual advances and forcibly tried to kiss her).

Notably, the OSI investigation report fails to mention *any* investigation into Plaintiff's complaint regarding the second incident.  (*See generally* Segarra Decl. Ex. A.)  Defendant argues that this is because Plaintiff "failed to identify the officer" alleged to have been involved in the second incident and "appeared confused about the date, could not provide the officer's name, [] admitted that she never reported this to anyone[, and] failed to name any witnesses to corroborate that this incident had occurred."  (Def's Mem. 15.)  Because of this, Defendant argues that this Court should "refuse[] to sustain claims of a hostile work environment where the [P]laintiff's claims are generalized and uncorroborated."  (*Id*. at 14.)

However, this argument fails for two reasons.  First, while it is true that Plaintiff admitted that she did not report this incident at the time to anyone at DOCCS, (*see* Pl's Depo. 27:16-17), Plaintiff did provide numerous identifying descriptors of the officer alleged to have conducted the act.  (*See id*. 26:18–19 (describing the officer as "a shorter bald[] black guy); 28:8–23 (identifying the officer as "black . . . maybe Hispanic, but a dark-skinned hue" who was "kind of short . . . between 30 and 40" and bald with no glasses).  Plaintiff provided several details to the investigator that, it appears, were not investigated.  In this way, the Court cannot fault the Plaintiff for her "uncorroborated" statements and would not characterize them as "self-serving." (Def's Mem. 14.)  Instead, Plaintiff consistently alleged this incident both in her deposition pursuant to the OSI investigation and later alleged it in her Complaint.  (*See generally* Pl's Depo.; Third Am. Compl. ¶ 15.)

Second, Defendant relies upon caselaw that ultimately does not support its argument that "generalized and uncorroborated" claims "routinely" fail at summary judgment in this context.

For example, the court in *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530, 2021 WL 3501238 (S.D.N.Y. Aug. 5, 2021) did not credit a plaintiff's allegations about the use of racial slurs because of "the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete."  *Id*. at *9.  However, the facts in *Maragh* were different than here: the plaintiff "conspicuously failed to even mention [the allegation of racial discrimination] in the original complaint," only adding it "for the first time in the amended complaint" he filed after being placed on administrative leave.  *Id*.  Moreover, the plaintiff made conclusory statements throughout his interrogatory responses about the extent of the racial discrimination, later "provid[ing] dramatically different" accounts at his deposition without any evidence to substantiate his conclusory allegations.  *Id*.  Here, Plaintiff consistently alleged the existence of the second incident between the OSI investigation and her Complaint, and Defendant proffered no evidence to otherwise dispute the second incident.  And, as stated in *Ramos v. Marriott Intern. Inc.*, 134 F. Supp. 2d 328 (S.D.N.Y. 2001), a plaintiff "is required to prove only that the conduct is unwelcome, prompted by gender and severe enough to create an offensive environment."  *Id*. at 349.  A reasonable jury could find that this single incident was indeed unwelcome and sufficiently severe to create a hostile work environment.  *See Domingues*, 2021 WL 637016, at *4–5 (collecting cases); *Howley*, 217 F.3d at 154 (finding that a co-worker's loud, public claim that the plaintiff had performed fellatio for her promotion was per se severe); *Pryor*, 992 F. Supp. 2d at 255, 259 (finding single incident to give rise to hostile work environment claim where co-worker subjected female plaintiff to sexual advances and forcibly tried to kiss her).

Finally, Defendant urges this Court to view witness interviews and testimony as dispositive of Plaintiff's ultimate credibility, repeatedly pointing to co-worker testimony to

demonstrate that Plaintiff's allegations are "uncorroborated" and thus cannot survive at summary

judgment. (*See* Def's Mem. 14–16.) However, "[t]he question of whether a work environment

is sufficiently hostile to violate Title VII is one of fact." *Holtz v. Rockefeller & Co.*, 258 F.3d 62,

75 (2d Cir. 2001). Summary judgment is appropriate only if it can "be concluded as a matter of

law that no rational juror could view [the defendant's conduct] as . . . an intolerable alteration of

[the plaintiff's] working conditions." *Howley*, 217 F.3d at 154. Here, a jury could reasonably

credit Plaintiff's testimony over denials by co-workers. It is not the role of this Court to make

credibility determinations, as the Court is tasked with "assess[ing] whether there are any factual

issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks and citation omitted); *see also*

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986) (explaining that a court should not

make "[c]redibility determinations" when "ruling on a motion for summary judgment").

Accordingly, there remains a genuine factual dispute as to the severity of the second incident

sufficient to withstand summary judgment.[11]

---

[11] While the Court has determined that second incident raises a potentially severe hostile
work environment, the Court must note that Plaintiff presents no additional evidence of
intimidation, ridicule, or insult based on Plaintiff's sex to support a hostile work environment
claim. "It is axiomatic that in order to establish a sex-based hostile work environment under
Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano*,
294 F.3d at 374 (quotation marks and citation omitted). The remainder of Plaintiff's timely
allegations, such as being pushed by security staff, (Def's 56.1 ¶ 38; Pl's Resp. 56.1 ¶ 38),
walking very slowly in front of Plaintiff and allowing a door to slam in Plaintiff's face, (*see*
Def's 56.1 ¶¶ 16–17; Pl's Resp. 56.1 ¶¶ 16–17), are facially sex-neutral.
While in *Alfano*, the Second Circuit advised that "[f]acially neutral incidents may be
included . . . among the 'totality of circumstances' that courts consider in any hostile work
environment claim, so long as a reasonable fact-finder could conclude that they were, in fact,
based on sex" the plaintiff must still offer "some circumstantial or other basis for inferring that
incidents sex-neutral on their face were in fact discriminatory." *Alfano*, 294 F.3d at 378. In so
holding, the *Alfano* court cited *Howley*, in which the Second Circuit had found that the "fact-
finder could reasonably infer that facially sex-neutral incidents were sex-based where the
perpetrator had previously made sexually derogatory statements," *id.* (citing *Howley*, 217 F.3d at
155–56). Here, while Plaintiff has "offer[ed] a laundry list of facially neutral allegations in an

Defendant also argues that Plaintiff's hostile work environment claim must ultimately fail because Plaintiff has not established as a matter of law "that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano*, 294 F.3d at 373 (citation omitted). (*See also* Def's Mem. 17–20.) Because the "harassment which led to the hostile work environment was attributable to a co-worker, not a supervisor . . ., [Plaintiff] must demonstrate that [DOCCS] either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996) (quotation marks and citation omitted). "When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages . . . compris[ed of] two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

Defendant argues that "it is undisputed" that DOCCS exercised reasonable care to prevent sexually harassing behavior, because it "conducted multiple investigations into Plaintiff's allegations of harassment regarding: (1) officers blocking her path; (2) sexual harassment; (3) the Oct. 4, 2017 incident; and (4) every other complaint made by Plaintiff." (Def's Reply 4.) Plaintiff largely argues, without citation to relevant caselaw, that the numerous investigations conducted by Defendant were not reasonable as a matter of law because "there was no reasonable action to address the matter." (Pl's Opp. 4; *see also id.* 4–7 (describing the

---

attempt to establish that the hostility of [Plaintiff's] work environment at [Bedford Hills] was because of her [sex]," Plaintiff "has failed to present any evidentiary basis to infer that the incidents alleged were based on [Plaintiff's] [sex,] or otherwise animated by discriminatory intent." *Petrisch*, 2013 WL 1316712, at *14.

various ways Plaintiff believes the investigations were insufficient).)  When reviewing the relevant investigations however, while the record does reflect that DOCCS "provided [Plaintiff] with a reasonable avenue for complaint[,] [and] she took advantage of it[,]" there is a question of fact as to whether DOCCS "took prompt action in response to the situation." *Van Zant*, 80 F.3d at 715.

Plaintiff first alleged information about the second incident to DOCCS as a part of the September 20, 2018 investigation conducted by the OSI Sex Crimes Unit where Plaintiff alleged "that she had been sexually harassed and retaliated against while employed at Bedford Hills . . . by a co-worker[,]" presumably referring to the time-barred incident with CO Cooper.  (Def's 56.1 ¶ 57; Pl's Resp. 56.1 ¶ 57.)  The investigator began the investigation by reviewing previous case files and investigations related to Plaintiff's other complaints.  (Def's 56.1 ¶¶ 58–59; Pl's Resp. 56.1 ¶¶ 58–59.)  Approximately one and a half months later, the investigator interviewed Plaintiff and she raised the second incident.  (*See* Pl's Depo. 26:11-27:23; Segarra Decl. Ex. A at 4 (recounting the incident).)  Less than a month later, DOCCS forwarded Plaintiff's allegations of harassment to the Westchester County District Attorney's office, and continued to investigate Plaintiff's claims.  (Def's 56.1 ¶¶ 63–64; Pl's Resp. 56.1 ¶¶ 63–64.)  By June 25, 2019, the District Attorney's office declined to prosecute Plaintiff's claims due to "inconsistencies" in Plaintiff's reports, and the OSI Sex Crimes Unit recommended that Plaintiff's allegations be closed as unsubstantiated by November 24, 2020.  (*See* Def's 56.1 ¶¶ 65, 68; Pl's Resp. 56.1 ¶¶ 65, 68.)

Despite Defendant's assertion that "Plaintiff's contention[] that DOCCS did not do anything in a reasonable time to investigate the matter . . . [is] factually incorrect," (*see* Def's Mem. 17–18), Defendant's own proffered evidence seems to suggest otherwise.  Defendant

proffered an exhibit titled "10 Step Internal Complaint Investigation Process" which, by Defendant's own admissions, governs DOCCS' internal complaint and investigation process. (Timmons Decl. ¶ 5; *see also* Timmons Decl. Ex. A ("Complaint Process") (Dkt. No. 94-1).) According to the first section of this guidance, "[a]ll investigations of internal complaints filed within an agency or authority should be completed . . . within 30 days of receipt of the complaint.  If additional time is needed to complete an investigation due to its complexity, a request for an extension may be submitted to the Director and Counsel for Investigations in the Workforce Development Unit of the Governor's Office of Employee Relations."  (Complaint Process 1.)  Defendant has not provided the Court with record evidence explaining this apparent discrepancy in the length of the various investigations conducted by DOCCS, none of which was concluded in 30 days.  (*See supra* Section I.A.2–4 (discussing three investigations that each lasted nine months or longer).)  As such, the Court cannot conclude as a matter of law that Defendant's investigations were sufficiently reasonable to foreclose liability.  *See Sassaman v. Gamache*, 566 F.3d 307, 314–15 (2d Cir. 2009) ("The failure of an employer to conduct an adequate investigation or to undertake an appropriate response can constitute evidence in support of a Title VII plaintiff's allegations."); *Pzonticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 431 (S.D.N.Y. 1998) (finding that evidence of an administrative procedure for sexual harassment complaints as well as a plaintiff's statement that "her complaints of harassment were not adequately investigated and promptly corrected" is a "factual dispute, resolution of which is inappropriate at" summary judgment).

Defendant cites several cases in its Reply to argue that "where an employer conducts a bona-fide investigation and takes appropriate remedial measures[,] the employer is not liable for alleged harassment by its employees."  (Def's Reply 4 (collecting cases).)  However, each case

cited by Defendant is distinguished on the record here, as the investigations were completed *much faster* than any of the investigations conducted by DOCCS. *See, e.g.*, *Van Zant*, 80 F.3d at 715 (describing an investigation that was completed from start to finish, including interviews, in four days); *Rios v. Buffalo & Fort Erie Pub. Bridge Auth.*, No. 04-CV-375, 2008 WL 657121, at *7 (W.D.N.Y. Mar. 7, 2008) (emphasizing that "each time the [defendant] learned of inappropriate or offensive conduct by non-supervisory employees, it acted immediately"), *aff'd* 326 Fed. App'x. 612 (2d Cir. 2009) (summary order); *Gonzalez v. Beth Israel Medical Ctr.*, 262 F. Supp. 2d 342, 347–48 (S.D.N.Y. 2003) (describing the outcome of a seven-day investigation into sexual assault allegations). To be sure, the length of an investigation by itself is not dispositive of the reasonableness inquiry: a very short investigation could be insufficient, while a years-long investigation could indicate that an investigation was particularly thorough. However, given DOCCS' own guidance setting a limit for the length of investigations, which was not followed based on the record, there is a genuine factual dispute sufficient to withstand summary judgment.[12]

---

[12] The Court, however, does agree with Defendant that "Plaintiff's disagreement with the way the investigations were [otherwise] conducted, and the results is insufficient to establish that the investigation was a sham." (Def's Reply 4–8.) Plaintiff's entire argument for DOCCS' liability appears to be that she "reported these incidents of sexual harassment to the appropriate authorities, but there was no reasonable action to address the matter." (Pl's Opp. 4.) Plaintiff spends the majority of her opposition recounting the various ways she believes the investigation could have been better, or otherwise outlines disagreements she has with the conclusions of the various investigators. (*Id*. at 4–7.) However, at this stage, the only support for Plaintiff's claims is her deposition testimony. (*See generally* Pl's Opp.) Plaintiff has largely provided no direct or circumstantial evidence to support her contentions about the reasonableness of the investigation, and specifically DOCCS efforts to substantiate any of the harassment allegations as attributed to her various named and unnamed coworkers. "If [Plaintiff]—with the full subpoena power of the federal courts behind her—could not uncover such evidence in the several months of discovery available to her, the Court is not inclined to conjecture that [DOCCS] could have received better results." *Gonzalez*, 262 F. Supp. 2d at 355.

Accordingly, the Court denies Defendant motion for summary judgment on Plaintiff's hostile work environment claim.

### 2.  Retaliation

Finally, Defendant argues that "Plaintiff's retaliation claims . . . fail because she cannot establish any materially adverse change in the terms and conditions of her employment, much less one that was based on engagement in any protected activity, as is required to prevail on a retaliation claim under Title VII."  (Def's Mem. 21–25.)  "Title VII forbids an employer from discriminating against an employee because the employee 'has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participating in any manner in any investigation, proceeding, or hearing under this subchapter.'"  *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 330 (S.D.N.Y. 2020) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)).

"To make out a prima facie case of retaliation, a plaintiff must demonstrate that '(1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected

---

Similarly, to the extent that Plaintiff argues that DOCCS is liable because it did not find CO Cooper (whose related allegations are time-barred) or any other DOCCS employees liable for her alleged incidents, "though [Plaintiff] has the right to believe [her co-workers] should have received a more stern punishment, 'nothing gives her the right to choose the penalty for the harasser.'"  *Id*. (quoting *Wahlstrom v. Metro-North Commuter R. Co.*, 89 F. Supp. 2d 506, 525 (S.D.N.Y. 2000)).  With respect to CO Cooper specifically, while ODM determined that the claim against Cooper could not be substantiated, ODM advised him that "retaliation against the [Plaintiff] or any person who participated in the investigation is illegal[] and any allegation of retaliatory conduct [would] be investigated."  (Steuhl Decl. Ex. C; *see also* Def's 56.1 ¶ 35; Pl's Resp. 56.1 ¶ 35.)  Given that there is no further alleged conduct regarding CO Cooper toward Plaintiff or any other DOCCS employee, it appears that Defendant's investigation and action was indeed effective.  *See Gonzalez*, 262 F. Supp. 2d at 355–56 (concluding that after a suspension and a lack of evidence to indicate further misconduct, "no reasonable jury could find from such punishment that [the defendant] neglected its obligation to take prompt and effective action to remedy [the accused's] wrongdoing").

activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (italics omitted) (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)).  "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, non[-]discriminatory reason existed for its action."  *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)).  "If the employer demonstrates a legitimate, non-discriminatory reason, then 'the burden shifts back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation.'"  *Id.* (alterations omitted) (quoting *Raniola*, 243 F.3d at 625).  "Significantly, a plaintiff alleging retaliation in violation of Title VII must show at the final step of the analysis that retaliation was a 'but-for' cause of the adverse action, not simply a 'substantial' or 'motivating' factor in the employer's decision."  *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348–49 (2013)).

Defendant primarily argues that Plaintiff cannot establish a prima facie case of retaliation against DOCCS because she cannot demonstrate that she suffered any materially adverse action.  (*See* Defs.' Mem. 21–25.)  The Court agrees.  Plaintiff has not established that she suffered any materially adverse action, or that there is a causal connection between the protected activity and any allegedly adverse action.

Construing the facts in the light most favorable to Plaintiff, as the Court must, *see Torcivia*, 17 F.4th at 354, the Court finds that Plaintiff engaged in protected activity of which Defendant was aware by lodging internal complaints regarding the incidents of alleged sexual harassment.  *See supra* I.A.  *See Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 222

(E.D.N.Y. 2014) (explaining that for purposes of demonstrating that a plaintiff engaged in protected activity, "[t]he complaint can be informal—an employee does not need to lodge a formal complaint of discrimination" (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000))); *but see Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 107–08 (2d Cir. 2011) (per curiam) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or reasonably could have understood, that the plaintiff's complaint was directed at *conduct prohibited by Title VII*." (emphasis in original) (alteration and citation omitted)).  Plaintiff appears to argue that after she made these complaints, Defendant retaliated against her by: (1) "seeking to subject [her] to surveillance"; (2) receiving a counseling memo after being absent from work, and (3) the third incident, or alleged assault on October 4, 2017.  (*See* Pl's Opp. 9.)[13]  The Court will address each alleged adverse action in turn.

"To establish an adverse employment action for purposes of a retaliation claim, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Bowen-Hooks*, 13 F. Supp. 3d

---

[13] Defendant argues that it is entitled to summary judgment on this claim for several reasons, many of which were not addressed by Plaintiff in Opposition.  (*Compare* Def's Mem. 21–25 (identifying retaliation incidents such as "negative treatment by co-workers," "denial of worker's compensation claim," and Plaintiff's transfer) *with* Pl's Opp. 8–9).  Because Plaintiff is represented by counsel in this matter, the Court deems these claims abandoned.  See *Kovaco v. Rockbestos–Surprenant Cable Corp.*, 834 F.3d 128, 143–44 (2d Cir. 2016) (holding that the counseled plaintiff abandoned certain claims because the plaintiff's brief in opposition was "bereft of any mention of the purported ... claims, let alone argument why these claims should survive summary judgment" (emphasis in original)); *Jackson v. Federal Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

at 224 (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010)).  "The scope of actions that may be materially adverse for purposes of a Title VII retaliation claim is broader than those actions prohibited by Title VII's anti-discrimination provisions; the latter apply to the terms and conditions of employment, while the former 'anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harms.'"  *Id.* (quoting *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010)).  Some examples may include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities."  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citation omitted).

First, while the Parties dispute whether Plaintiff was actually "put under surveillance," (*see* Pl's Opp. 9 ("Defendant officials were exchanging emails regarding how Plaintiff needs to be put on surveillance because she filed a lawsuit."); Def's Reply 9 (stating that "[n]o surveillance was ever conducted")), "excessive scrutiny without a tangible negative consequence to the employee does not rise to the level of an adverse employment action."  *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 334 (S.D.N.Y. 2020) (collecting cases).  Specifically, "alleged close monitoring or observation by an employer is not an adverse action."  *Id.* (collecting cases).  Accordingly, Plaintiff cannot demonstrate a prima facie case of retaliation based upon increased scrutiny by DOCCS.

Second, the Parties agree that Plaintiff received a formal counseling memo on February 27, 2018 for failing to report to an assigned shift.  (Def's 56.1 ¶¶ 93–94; Pl's Resp. 56.1 ¶¶ 93–94.)  Specifically, the counseling memo stated that Plaintiff "failed to report for [her] scheduled shift and/or did not notify the facility of [her] absence within reporting requirement[s]" and

32

informed Plaintiff that being "AWOL" was "extremely serious." (Tsuruga Decl. Ex. A (Dkt. No. 83-1).) However, a formal counseling memo without a tangible negative consequence does not constitute an adverse employment action. *See, e.g., Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001) (describing a similar "notice of discipline" and "counseling memo" as "insufficient" because the plaintiff alleged no facts to infer a materially adverse change in working conditions), *abrogated on other grounds by Nat'l R.R. Passenger Corp.*, 536 U.S. 101; *Maragh*, 2018 WL 6573452, at *3 (holding that counseling memo is not adverse action unless it "lead[s] to more substantial employment actions that are adverse") (quoting *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 306 (N.D.N.Y. 2013)). While Plaintiff might disagree with the issuance of the formal counseling memo itself, (*see* Pl's Opp. 9), the fact that the "counseling memorandum is not a positive development in an employee's processional [sic] career" is not enough to transform the memorandum into an adverse action, (*id.*) Accordingly, Plaintiff cannot demonstrate a prima facie case of retaliation based upon the formal counseling memo.

Third and finally, Plaintiff is correct that acts of physical assault, as alleged in the third incident, "can constitute adverse actions for purposes of a retaliation claim." *Ray v. N.Y. State Ins. Fund*, No. 16-CV-2895, 2018 WL 3475467, at *12 (S.D.N.Y. July 18, 2018) (collecting cases) (quoting *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 404 (S.D.N.Y. 2016)). However, Plaintiff has utterly failed to establish that the corrections officer who allegedly pushed her knew about Plaintiff's complaints, or that liability for this corrections officer's alleged actions should be imputed to DOCCS. To start, Plaintiff fails to adequately address these issues in her response, instead focusing again on the sufficiency of DOCCS' investigation. (*See generally* Pl's Opp.) At most, Plaintiff claims that unidentified officers were aware of her allegations against CO Cooper because "at times she was told by officers that a gag

was put on her and Cooper put a gag on her." (Pl's Resp. 56.1 ¶ 101.) However, Plaintiff has not pointed this Court to any evidence in the record—nor has the Court been able to identify any evidence—that any officer involved in the alleged incident in fact had actual knowledge of her protected activity. Instead, Plaintiff stated in her deposition her own "belief" that CO King, who Plaintiff identified as the specific perpetrator, must have known about the incident because she "[did] not know her." (Pl's Depo. 34:23–35:21.) Plainly, Plaintiff's unsupported conjecture about an officer's knowledge is not enough to establish a causal connection between the adverse action and the protected activity as it may relate to that *specific* officer, let alone to impute liability to DOCCS.

Moreover, to the extent there remains an argument imputing liability to DOCCS based on the sufficiency of Defendant's investigation into the incident, while "the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship . . . courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Flood v. UBS Glob. Asset Mgmt., Inc.*, No. 10-CV-374, 2012 WL 288041, at *17 (S.D.N.Y. Feb. 1, 2012) (alterations, citations, and quotation marks omitted) (collecting cases). Here, the alleged incident involving CO Cooper happened on May 13, 2015, approximately 18 months prior to this "pushing" incident on October 4, 2017. Even if DOCCS' investigation, which began at the earliest on May 27, 2017, was the catalyst for the temporal relationship, this is again over four months prior to the "pushing" incident. Accordingly, Plaintiff cannot demonstrate a prima facie case of retaliation based upon the alleged physical assault.

Therefore, Defendants' Motion for summary judgment on Plaintiff's retaliation claim is granted.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted in part and denied in part.  The Clerk of Court is directed to terminate the pending motion at Dkt. No. 80.  The Court will hold a status conference on May 3, 2023 at 2:30 PM.[14]

SO ORDERED.

Dated:    March 27, 2023
          White Plains, New York

_____
            KENNETH M. KARAS
            United States District Judge

---

[14] Because unredacted versions of these Motions and accompanying Memorandum were filed under seal, the Parties may have two weeks from the date of this Opinion & Order (the "Opinion") to propose redactions to the Opinion before it is issued publicly.